**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| EDMOND PATRICK BYRNE,<br><br>      Plaintiff,<br><br>   v.<br><br>K12 SERVICES INC.,<br><br>      Defendant. | Civil Action No. 17-4311(SDW)(LDW)<br><br>**OPINION**<br><br>August 8, 2017 |

**WIGENTON**, District Judge.

Before this Court is Defendant K12 Services Inc.'s ("K12" or "Defendant") motion to compel arbitration of Plaintiff Edmond Patrick Byrne's ("Byrne" or "Plaintiff") individual claims pursuant to the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.* and to dismiss Plaintiff's Complaint. This Court has jurisdiction pursuant to 28 U.S.C. § 1331. Venue is proper pursuant to 28 U.S.C. § 1391(b). This Court, having considered the parties' submissions, decides this matter without oral argument pursuant to Federal Rule of Civil Procedure 78. For the reasons stated below, this Court **GRANTS** Defendant's motion to compel arbitration and dismiss the Complaint.

I.   **BACKGROUND AND PROCEDURAL HISTORY**

In September 2011, Plaintiff was hired by K12 Services to fill the position of Vice President, School Development at a base salary of $160,000 plus stock options, bonuses, and benefits. (Compl. ¶ 6.) On October 13, 2011, Plaintiff signed an "Agreement to Arbitrate" (the "Agreement") which provides that "in consideration for the mutual promises and undertakings of the parties . . . the offer of employment, and/or salary or wage increase provided to Employee by K12 contemporaneously herewith," Plaintiff and K12 "agree to submit to confidential, final, and

binding arbitration" for "any dispute, claim or controversy that may arise between them arising from or relating to Employee's employment or the termination of Employee's employment, including, but not limited to claims arising from contract, tort, public policy, constitution, statute or ordinance, or involving the interpretation of this Agreement or any policy or practice of K12 Inc." (Dkt. No. 4 Ex. A.)[1]  The Agreement is not signed by K12.  (*Id.*)

Plaintiff alleges that during his employment he was subject to "blatant and subtle conflicts of interest, and ethical and legal problems that were commonplace in the practice and culture of K12" and which "came to a head on Tuesday, November 1, 2016" when Plaintiff was "threatened, harassed and attacked" by another K12 employee.  (Compl. ¶¶ 9-11.)  Plaintiff reported these events to K12 and was subsequently fired on Friday, November 4, 2016.  (Compl. ¶¶ 12-16.)

On April 28, 2017, Plaintiff filed a two-count complaint in the Superior Court of New Jersey, Law Division Hudson County (Dkt. No. L-1754-17) alleging that Defendant violated his rights under the New Jersey Conscientious Employee Protection Act ("CEPA") and the New Jersey Law Against Discrimination ("NJLAD").  (Dkt. No. 1.)  Defendant removed to this Court on June 14, 2017, and filed the instant motion to compel on July 5, 2017, citing the aforementioned Agreement.  (Dkt. Nos. 1, 4.)  Plaintiff opposed the motion on July 17, 2017, and Defendant filed its reply on July 24, 2017.  (Dkt. Nos. 5, 6.)

---

[1] Section 1 of the Agreement provides in full:
> K12 Inc. and Employee agree to submit to confidential, final, and binding arbitration any dispute, claim or controversy that may arise between them arising from or relating to Employee's employment or the termination of Employee's employment, including but not limited to claims arising from contract, tort, public policy, constitution, statute or ordinance, or involving the interpretation of this Agreement or any policy or practice of K12 Inc.  For example, and not for purposes of limitation, the parties agree to arbitrate all tort claims of any nature whether negligent or intentional; constitutional claims including privacy; claims under federal, state, county or municipal statute or ordinance, including any state anti-discrimination statute, Title VII of the Civil Rights Act of 1964 as amended, the Age Discrimination in Employment Act of 1967 as amended, the Americans with Disabilities Act, the Employee Retirement Income Security Act, federal and state family and medical leave laws, and any other law or regulation relating to employment, employment discrimination, employee wages, or benefits, except as provided in paragraph 2 below.

(Dkt. No. 4 Ex. A.)

## II. LEGAL STANDARD

The Federal Arbitration Act ("FAA") was enacted to ensure the enforcement of private arbitration agreements. *See, e.g.*, *AT&T Mobility, LLC v. Concepcion*, 563 U.S. 333, 344-45 (2011) (noting that "our cases place it beyond dispute that the FAA was designed to promote arbitration"); 9 U.S.C. § 2 (2015) (providing that written arbitration agreements "shall be valid, irrevocable, and enforceable"). "When a district court is presented with a motion to compel arbitration, it must answer the following two questions: (1) whether the parties entered into a valid arbitration agreement; and (2) whether the dispute at issue falls within the scope of the arbitration agreement." *Ellin v. Credit One Bank*, No. 15-2694, 2015 WL 7069660, at *2 (D.N.J. Nov. 13, 2015); *see also Century Indem. Co. v. Certain Underwriters at Lloyd's*, 584 F.3d 513, 525 (3d Cir. 2009). To conduct its inquiry, the court applies "ordinary state-law principles that govern the formation of contracts."[2] *Kirleis v. Dickie, McCamey & Chilcote*, 560 F.3d 156, 160 (3d Cir. 2009); *see also First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995). Motions to compel arbitration "should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *AT&T Tech., Inc. v. Commc'n Workers of Am.*, 475 U.S. 643, 650 (1986).

## III. DISCUSSION

*Validity of Arbitration Agreement*

"An agreement to arbitrate, like any other contract, must be the product of mutual assent, as determined under customary principles of contract law." *Atalese v. United States Legal Servs. Grp., L.P.*, 99 A.3d 306, 312-13 (N.J. 2014) (internal citation omitted). An arbitration agreement is valid and enforceable under New Jersey law where it "clearly" and "unambiguously" puts the parties on notice of their rights and their "intent to surrender those rights." *Noren v. Heartland Payment Sys.,*

---

[2] The parties appear to agree that New Jersey law applies to the contracts at issue. (*See, e.g.*, Pl.'s Opp'n. Br., Dkt. No. 5 *passim* (citing New Jersey case law); Def.'s Br., Dkt. No. 4 *passim* (citing New Jersey case law).)

*Inc.*, No. L-4528-06, 2017 WL 476216, at *2 (N.J. Super. Ct. App. Div. Feb. 6, 2017) (noting that "[n]o magical language is required to accomplish a waiver of rights" so long as the waiver is set out in "plain language that would be clear and understandable to the average" person); *see also Fawzy v. Fawzy*, 199 N.J. 456, 482 (2009).

Here, the Agreement, titled "K12 Inc. Agreement to Arbitrate," provides that the parties agree to its terms "in consideration for the mutual promises and undertakings of the parties as set forth below, the offer of employment, and/or salary or wage increase provided to Employee by K12 contemporaneously herewith." (Dkt. No. 4 Ex. A.) Plaintiff accepted K12's employment offer, signed the Agreement, and worked for Defendant for approximately five years. Plaintiff's signature, coupled with his continued employment is sufficient to show his intent to be bound. *See Quigley v. KPMG Peat Marwick, L.L.P.*, 749 A.2d 405, 412-13 (N.J. Super. Ct. App. Div. 2000) (upholding arbitration agreements where Plaintiff knowingly and voluntarily signed the agreements "and continued working for Defendant" for twelve years after the agreements were executed).

The Agreement clearly lays out the rights the parties are surrendering, including the right to a jury trial, and the scope of the claims subject to arbitration, including all claims "arising from or relating to Employee's employment or the termination of Employee's employment." (Dkt. No. 4. Ex. A.) The Agreement also provides that "[t]he parties acknowledge they have carefully read this Agreement and have had full opportunity to seek the advice of an attorney before executing this document" and enter into it "voluntarily, free from any duress or coercion." (*Id.*) Plaintiff does not claim confusion as to the terms of the Agreement or that he was fraudulently induced or coerced into signing it. Given this set of facts, this Court is satisfied that the Agreement put Plaintiff on notice of his rights and his intention to waive those rights and that the Agreement is valid.[3]

---

[3] Plaintiff argues that the agreement is not binding because it is not signed by a K12 representative. (Pl.'s Opp'n. Br., Dkt. No. 5 at 5-7.) However, the signature of both parties to an agreement is not *per se* required in order for the agreement to be valid, provided that the parties have shown an intent to be bound. *See, e.g.*, *Seriki v. Uniqlo New*

*Scope of the Arbitration Agreement*

The Third Circuit has instructed that "[i]n determining whether the particular dispute falls within a valid arbitration agreement's scope, there is a presumption of arbitrability: an order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *Century*, 584 F.3d at 524 (quoting *AT & T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 649, (1986)) (internal brackets and quotation marks omitted); *see also Varallo v. Elkins Park Hosp.*, 63 Fed. Appx. 601, 603 (3d Cir. 2003). Here, the scope of the Agreement includes "*any* dispute, claim or controversy that may arise between [the parties] arising from or relating to Employee's employment or the termination of Employee's employment . . .." (Dkt. No. 4 Ex. A (emphasis added).) The language of the Agreement is extremely broad and, as an example, is intended to cover claims arising from any "law or regulation relating to employment . . . discrimination." (*Id.*)[4] A reasonable person could and likely would interpret this broad language to include a dispute regarding the allegedly wrongful termination of Plaintiff's employment. This Court therefore finds that this dispute falls within the scope of the Agreement and Plaintiff's claims are subject to binding arbitration.

---

*Jersey, L.L.C.*, No. A-5835-13T3, 2015 WL 4207263, at *3 (N.J. Super. Ct. App. Div. July 4, 2015) (noting that although the signatures of both parties are "customary and desirable, a contract may be enforceable upon proof of some other explicit indication of intent to be bound"). Because both parties evidenced an intent to be bound by the terms of the Agreement, as discussed above, the absence of K12's signature from the Agreement does not invalidate it.

[4] The Agreement also contains a separate section titled "Claims Excluded from the Agreement" which carves out specific claims that are not covered, including workers' compensation and unemployment compensation. Had the parties wished to exclude CEPA or NJLAD claims, they could have done so. (Dkt. No. 4, Ex. A, Sec. 2.)

**IV.     CONCLUSION**

For the reasons set forth above, Defendant's Motion to Compel Arbitration is **GRANTED**. Plaintiff's Complaint will be **DISMISSED**.  An appropriate order follows.

　　/s/ Susan D. Wigenton　　　
SUSAN D. WIGENTON, U.S.D.J.

cc:     Clerk
　　　　Parties
　　　　Magistrate Judge Leda D. Wettre